UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| PAMELA MOTLEY, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>THE CITY OF FRESNO, CALIFORNIA, et al.,<br><br>Defendants. | No. 1:15-cv-00905-DAD-BAM<br><br>ORDER DENYING DEFENDANTS' MOTION TO TRIFURCATE TRIAL AND FOR LIMITED REOPENING OF DISCOVERY<br><br>(Doc. No. 162) |

This matter is before the court on the motion to trifurcate and for limited reopening of discovery filed on behalf of defendants the City of Fresno, California ("the City") and five individual officers employed by the City ("the Officers") (collectively, "defendants"). (Doc. No. 162.) Pursuant to General Order No. 617 addressing the public health emergency posed by the COVID-19 outbreak, the motion was taken under submission on the papers. (Doc. No. 164.) For the reasons set forth below, the court will deny defendants' motion.

**BACKGROUND**

The facts in this tragic case involving two separate acts of domestic violence—one severely disabling plaintiff Pamela Motley, and the other resulting in the death of Cindy Raygoza—have previously been recited by the court (*see* Doc. Nos. 57 at 2–5; 72 at 2–3, 133 at 2–6) and are incorporated here by reference. Following this court's rulings on two motions to dismiss and a motion for summary judgment, as well as the Ninth Circuit's reversal in part of this

court's grant of summary judgment, this action now proceeds on the equal protection claims brought by plaintiffs Motley and the estate of Cindy Raygoza ("the Raygoza estate") (collectively, "plaintiffs") against the Officers and the City, alleging that the Fresno Police Department ("FPD") treats domestic violence and female crime victims differently than similarly situated victims.  (*See generally* Doc. Nos. 57, 72, 133, 148.)

On March 18, 2020, defendants filed the pending motion.  (Doc. No. 162.)  Therein, defendants request that this court trifurcate the trial on plaintiffs' equal protection claims as follows:  Phase 1, a trial addressing whether the Officers violated plaintiffs' constitutional rights, "with such phase further bifurcated into separate trials" for plaintiff Motley's claims and for the Raygoza estate's claims; Phase 2, a trial addressing whether plaintiffs are entitled to punitive and/or exemplary damages; and Phase 3, a trial addressing whether the City is liable to plaintiffs pursuant to *Monell v. Department of Social Services of City of New York*, 436 U.S. 658 (1978). (*Id.* at 7.)  Defendants further request an order "reopening discovery only as to plaintiffs' non-party allegations relevant to their *Monell* claim." (*Id.* at 7–8.)

On April 21, 2020, plaintiffs filed their opposition to the pending motion, and on April 28, 2020, defendants filed their reply thereto.  (Doc. Nos. 163, 165.)

**DISCUSSION**

**A.     Motion to Trifurcate**

1.     <u>Legal Standard</u>

"For convenience, to avoid prejudice, or to expedite and economize, the court may order a separate trial of one or more separate issues[] [or] claims . . .."  Fed. R. Civ. P. 42(b).  "The district court has broad discretion to order bifurcation or trifurcation" under Rule 42(b).  *Briones v. City of San Bernardino*, No. 10-cv-07571, 2012 WL 13124163, at *1 (C.D. Cal. Feb. 16, 2012); *see also Estate of Lopez v. Suhr*, No. 15-cv-01846-HSG, 2016 WL 1639547, at *4 (N.D. Cal. Apr. 26, 2016) ("Rule 42(b) confers 'broad authority,' and 'giv[es] the district court virtually unlimited freedom to try the issues in whatever way trial convenience requires.'") (internal citations omitted).

/////

2.  Analysis

Plaintiffs agree to bifurcation of the liability and punitive damages phases of the trial. (Doc. No. 163 at 10.) Accordingly, the court will order the trial in this action to be bifurcated into a liability phase and punitive damages phase.[1] However, for the reasons explained below, the court will not order further bifurcation of the liability phase as requested by defendants and will deny their motion for trifurcation.

Defendants contend that separating the issues of the Officers' liability from the City's liability "will promote judicial economy and reduce undue prejudice to Defendants because: (a) proof of a constitutional violation by an individual officer-defendant is a prerequisite to establishing municipal liability; [and] (b) evidence of municipal patterns and practices is cumbersome, time-consuming, issue-confusing, and unduly prejudicial to individual officers through a guilt-by-association effect . . .." (Doc. No. 162 at 7.)

As an initial matter, defendants are correct that an underlying constitutional violation by an individual officer is a prerequisite to establishing municipal liability. *See City of Los Angeles v. Heller*, 475 U.S. 796, 799 (1986) ("[N]either *Monell* . . . nor any other of our cases authorizes the award of damages against a municipal corporation based on the actions of one of its officers when in fact the jury has concluded that the officer inflicted no constitutional harm."). It does not follow, however, that the trial on individual officer liability should be bifurcated from the trial on plaintiffs' municipal liability claim. A court may exercise its discretion and bifurcate those claims "[f]or convenience, to avoid prejudice, or to expedite and economize." Fed. R. Civ. P.

---

[1] Courts routinely bifurcate liability and punitive damages claims in 42 U.S.C. § 1983 actions like this one. *See Briones*, 2012 WL 13124163, at *1 ("Bifurcation of a trial into liability and damages phases may be appropriate where doing so would be economical and efficient, and where there is little overlap in the evidence that would be presented at each phase.") (citing *Arthur Young & Co. v. U.S. Dist. Court (Kaufman)*, 549 F.2d 686, 697 (9th Cir. 1979)); *see also Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1101–02 (C.D. Cal. 2002) (finding bifurcation of the punitive damages claim in a 42 U.S.C. § 1983 action would "promote convenience and efficiency"); *Estate of Avila v. City of Long Beach*, No. 17-cv-05607-ABJ-PRX, 2018 WL 7501260, at *2 (C.D. Cal. Dec. 18, 2018). In this regard, it is the undersigned's practice to submit the question of plaintiffs' entitlement to punitive damages to the jury at the time it determines whether liability has been established and to bifurcate only the issue of the amount of punitive damages and evidence of defendants' worth. The court will follow that practice in this case.

3

42(b). Bifurcation is an inherently case-specific inquiry that requires a court to compare the plaintiff's claims against an individual officer to her claims against the municipality as well as the evidence that plaintiff intends to present at trial in support of each claim.  Indeed, in the cases defendants cite in support of their pending motion, as well as every other opinion or ruling this court has come across in its research, courts found bifurcation of individual officer liability and municipal liability was warranted only after making case-specific findings under Rule 42(b). *See, e.g.*, *Boyd v. City & Cty. of San Francisco*, No. C-04-5459 MMC, 2006 WL 680556, at *2 (N.D. Cal. Mar. 14, 2006) ("Bifurcation will avoid prejudice to the individual officers, as the evidence relevant to the claims against the individual officers does not overlap in any meaningful way with the evidence relevant to the claims against the City and Chief Fong."); *Estate of Lopez*, 2016 WL 1639547, at *7 ("Plaintiffs' claims against Chief Suhr are conceptually distinct from their claims against the Officers:  their ratification theory involves only post-shooting facts, while their failure to train theory involves pre-shooting facts that do not directly relate to Perez Lopez's case."); *Jones v. City of Chicago*, No. 98 C 5418, 1999 WL 160228, at *3 (N.D. Ill. Mar. 10, 1999) ("Another factor we consider when faced with a motion to bifurcate is whether the evidence required to prove the respective claims will overlap."); *Figueroa v. Gates*, 207 F. Supp. 2d 1085, 1101–02 (C.D. Cal. 2002) ("The Court finds that the issues presented by the question of whether this vote was unconstitutional are distinct from any of the questions involved in the individual liability claims.").  Here, comparing plaintiffs' claims against the individual officer defendants to their claims against the municipality as well as the evidence plaintiffs are likely to present at trial in support of each claim, the court concludes that bifurcation of the liability phase is not warranted.

First, defendants only generally argue that "proof of an individual officer defendant's liability for a constitutional violation *typically* involves evidence . . . regarding a single instance," whereas "proof of *Monell* liability invariably involves the presentation of evidence that goes to the lawful nature of the municipality's policies or customs[,] typically by introduction of multiple incidents, some of which may not involve the individual defendants at all." (Doc. No. 162 at 13–14) (emphasis added).  Defendants provide no specific analysis as to the individual officer

liability and municipal liability claims *in this case* and fail to address whether those claims and the evidence in support thereof overlap, much less why presenting those claims together to the jury would unduly prejudice the Officers.  Rather, defendants merely cite to district court opinions that found bifurcation of officer liability and municipal liability *in those cases* to be warranted.  This falls short of their burden as the movants seeking trifurcation and is reason alone to deny their motion.

Second, defendants rely on cases that are distinguishable because each of those cases involved excessive use of force claims.  *See generally Quintanilla v. City of Downey*, 84 F.3d 353 (9th Cir. 1996); *Boyd*, 2006 WL 680556; *Jones*, 1999 WL 160228.  The risk of prejudice to individual officers from introducing evidence relevant to municipal liability in excessive force cases is understandably high, due to the often jarring and shocking nature of excessive force allegations.  If a plaintiff claims that an officer-defendant used excessive force against him, the jury, in determining whether that officer-defendant did use excessive force, would have to consider whether the force employed was justified under the circumstances presented.  If, however, evidence of other instances or allegations of excessive use of force involving other officers employed by the same police department was introduced to the jury, there is a risk "that evidence relevant to municipal liability may unfairly prejudice [the] government officials whose individual liability is being tried in the same case." *Miniter v. City of Los Angeles*, No. 10-cv-05826-MMA-GRX, 2011 WL 13134767, at *6 (C.D. Cal. Sept. 9, 2011).  Here, plaintiffs are not asserting excessive use of force claims; rather, they assert equal protection claims, alleging that FPD treats domestic violence and female crime victims differently than similarly situated victims.

Third, plaintiffs argue that their equal protection claims against the Officers and the City are overlapping.  In their opposition to the pending motion, plaintiffs contend "that evidence of discrimination by or against non-parties may be admissible if it shows that the plaintiffs' discrimination claims against the defendants were but a manifestation of a larger culture or atmosphere of bias." (Doc. No. 163 at 5.)  Plaintiffs contend that the evidence they intend to introduce in in support of their claims is "cross-admissible against both the individual officers and the City of Fresno." (*Id.*)  Defendants reply that this argument "shows that plaintiffs can present

5

no new evidence to overcome the fatal flaw in their *Monell* and Equal Protection claims—namely, that they have **no evidence** showing that any of the *individual defendant officers* subjected either *plaintiff Motley* or *decedent Raygoza* to any inferior law enforcement action." (Doc. No. 165 at 3.)  Defendants' argument in this regard is appropriately made at the trial of this action to the jury, whose responsibility it will be to determine whether plaintiffs have established each element of their claims.  At this juncture, however, plaintiffs' position is that they intend on presenting overlapping evidence to establish the City's liability and the Officers' liability.  To the extent that is the case—and defendants do not persuasively argue otherwise—bifurcation of the issues of individual officer liability and municipal liability in this action is clearly not warranted. *See Estate of Avila v. City of Long Beach*, No. 17-cv-05607-ABJ-PRX, 2018 WL 7501260, at *2 (C.D. Cal. Dec. 18, 2018) ("Accepting Plaintiffs' description of their *Monell* theory, it appears that all liability evidence will be most efficiently presented in a single phase."); *Briones*, 2012 WL 13124163, at *2 (finding "that trifurcating the trial would not promote convenience or efficiency, nor would it be economical because there will be overlap in testimony by witnesses who would be required to testify during each stage of the trial" and that "[t]he conduct of the individual officer and evidence supporting the *Monell* claims need to be presented together to give the jury context for understanding the Plaintiffs' case").

Because defendants have not carried their burden in moving for trifurcation of the trial in this case, and because judicial economy and convenience weigh in favor of trying the issues of the Officers' liability and the City's liability together, defendants' motion to trifurcate will be denied.[2]

**B.    Motion to Reopen Discovery**

Defendants also move for an order "reopening discovery only as to plaintiffs' non-party allegations relevant to their *Monell* claim, for a period of about six months . . . with a dispositive motion filing cutoff approximately one month after this six month period, with the trial to follow

---

[2] The court will also deny defendants' request to further bifurcate the individual officer liability claims asserted by plaintiff Motley and those asserted by the Raygoza estate because here, too, defendants have failed to carry their burden, and judicial economy and convenience weigh in favor of trying all of the liability claims together.

about three months thereafter."³ (Doc. No. 162 at 7–8.) The discovery and dispositive motion deadlines in this action expired in 2017. (*See* Doc. No. 94.) Pursuant to Federal Rule of Civil Procedure 16(b)(4), a scheduling order "may be modified only for good cause and with the judge's consent."

Here, defendants merely state that they "did not depose [the non-party witnesses] prior to the discovery cutoff because it did not appear their testimony was necessary in order for defendants to prevail on summary judgment." (Doc. No. 162 at 20.) Defendants argue that prior to the Ninth Circuit's "unexpected reversal" of this court's order granting their summary judgment motion as to plaintiffs' equal protection claims (see Doc. Nos. 133, 148), they did not see the need to depose plaintiffs' non-party witnesses because they believed that "plaintiffs' responses to written discovery and deposition testimony revealed the fatal defects in their claims." (Doc. No. 162 at 21.) Defendants' decision to not depose the non-party witnesses was clearly a strategic litigation choice by defendants and their counsel. The fact that they may now regret having made that strategic decision obviously fails to meet Rule 16(b)(4)'s good cause standard. Defendants have failed to establish good cause either to re-open discovery or law and motion and their motion to do so will therefore be denied.

It has been determined "that there are genuine disputes of material facts about whether the FPD treats disfavored groups of crime victims—women and domestic violence crime victims—differently than similarly situated victims." *Motley v. Smith*, 775 Fed. App'x. 371, 372 (9th Cir. 2019). This long-ago filed case will now proceed to trial when permitted by the COVID-19 pandemic and this court's otherwise crowded trial calendar.

**C.     Trial Date**

In their opposition to the pending motion, plaintiffs "request to have this case proceed to trial at the earliest possible time," in part because plaintiff Motley "has been diagnosed with

---

³ Alternatively, defendants seek an order reopening discovery only as to plaintiffs' non-party allegations relevant to their *Monell* claim but staying such discovery until after a finding of individual officer liability at Phase 1 of their proposed trial structure. (Doc. No. 162 at 8.) Because the court will deny defendants' motion to trifurcate, this alternative proposal is also rejected.

7

cancer, and, although she is now in remission, her condition just recently was very serious and prevented her from attending the appellate oral argument." (Doc. No. 163 at 9–10.) Additionally, plaintiffs note that "a large part" of their case depends on "the other action and proof of discrimination" based on the testimony of non-party witnesses, and that "[t]here is a real risk that multiple additional years of delay will impair plaintiffs' ability to present as effective a case once trial arrives." (*Id.* at 10.) To that end, plaintiffs note their openness to "transferring [this case] for hardship purposes to another federal district." (*Id.* at 2.)

The court is sympathetic to plaintiffs' concerns and to plaintiff Motley's medical condition and will do its best to move this case to trial. However, as noted above and in the undersigned's standing order issued in light of the judicial emergency in the Eastern District of California, this district labors under one of the heaviest caseloads in the nation, is in need of additional judgeships, and currently two of its six authorized judgeships are not filled. (Doc. No. 160.) Although two nominations have recently been made, those nominees have not been confirmed by the Senate. Moreover, as also noted above, the current global pandemic caused by the COVID-19 virus has further hindered the court's ability to conduct proceedings in a timely manner. *See* General Order No. 618 (noting that Eastern District courthouses shall remain closed to the public and that the court will not call in jurors for jury service or conduct trials until further notice).

In light of the judicial emergency, a trial date was not rescheduled in this action following the Ninth Circuit's remand order. (Doc. No. 158.) These judicial emergencies persist as of the date of this order. It remains unclear when the court will be able resume conducting jury trials and whether, once it does so, any civil cases will be able to be tried. Nonetheless, the court will direct the parties to meet and confer, after consulting with Courtroom Deputy Jami Thorp (JThorp@caed.uscourts.gov), and within fourteen days of the service of this order submit proposed final pretrial conference and jury trial dates.[4]

---

[4] If the court were to reopen and jury trials were to commence once again, the undersigned may attempt to identify a visiting judge who is available to undertake the trial of the case if, as is likely, the undersigned is unavailable because of the backlog of criminal trials.

**CONCLUSION**

For the reasons set forth above:

1. Defendants' motion to trifurcate and to reopen discovery and law and motion (Doc. No. 162) is denied;

2. The trial in this action will be bifurcated into a liability phase and punitive damages phase; and

3. The parties are directed to meet and confer, after consulting with Courtroom Deputy Jami Thorp (JThorp@caed.uscourts.gov), and within fourteen days of the service of this order submit proposed final pretrial conference and jury trial dates.

IT IS SO ORDERED.

Dated:  **July 5, 2020**                                  /s/ Dale A. Drozd
                                                                       UNITED STATES DISTRICT JUDGE